UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

  UNITED STATES OF AMERICA,

        v.                                                                          21-CR-50

  LARRY WATKINS, JR.,

        Defendant.
_____

## DECISION AND ORDER REGARDING DETENTION PENDING TRIAL

Before the Court is an appeal filed by the defendant, Larry Watkins, Jr., Docket

Item 49, from an order of United States Magistrate Judge H. Kenneth Schroeder, Jr.,

denying Watkins's motion for release, Docket Item 44.  For the reasons that follow, and

in accordance with 18 U.S.C. § 3142(e), (g) and § 3145(a), the order of detention issued

by Judge Schroeder is vacated, and Watkins is hereby ordered to be released pending

trial on the conditions described below.

## APPLICABLE LAW

**I.      REVIEW OF A DETENTION ORDER**

"In reviewing a detention order of a magistrate judge, a district judge should not

simply defer to the judgment of the magistrate judge, but rather must reach [his or] her

own independent conclusions."  *United States v. Enix*, 209 F. Supp. 3d 557, 563–64

(W.D.N.Y. 2016) (citing *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985)).

Because Judge Schroeder explicitly referred to this Court's order of detention on

Watkins's violation of supervised release as influencing his decision to detain Watkins

pending trial, *see* Docket Item 49-1 at 1, such *de novo* review is especially important here.  When conducting this "*de novo review*, the district court may rely on the record of the proceedings before the magistrate judge and may also accept additional evidence." *Id.* (quoting *United States v. Marra*, 165 F.Supp.2d 478, 481 (W.D.N.Y. 2001)).

## II.     PRETRIAL DETENTION

"If, after a hearing pursuant to [18 U.S.C. § 3142(f)], the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial."  18 U.S.C. § 3142(e)(1).  "The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

> (1) the nature and circumstances of the offense charged . . . ;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*Id.* § 3142(g).

Judicial findings under the statute require different standards of proof.  A finding

"that no condition or combination of conditions will reasonably assure the safety of any

other person and the community shall be supported by clear and convincing evidence,"

*id.* § 3142(f); on the other hand, a finding that a defendant poses a risk of flight need be

supported only by a preponderance of the evidence.  *See United States v. English*, 629

F.3d 311, 319 (2d Cir. 2011).  The inquiry with respect to flight is two-part: "First, the

court must make a finding as to whether the defendant presents a risk of flight if not

detained.  Second, if the court finds that a defendant is likely to flee, then the court must

proceed to the second step of the inquiry, namely, whether there are conditions or a

combination of conditions which reasonably will assure the presence of the defendant at

trial if he is released."  *United States v. Shakur*, 817 F.2d 189, 194–95 (2d Cir. 1987)

(citations omitted).  The Court's findings do not need to be supported by testimony

under oath, as "[i]t is well established in [the Second Circuit] that proffers are

permissible both in the bail determination and bail revocation contexts."  *United States*

*v. LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000).

## **ANALYSIS**

The Court has carefully reviewed the parties' submissions and considered their

respective arguments.[1]  Based upon its review of the record and the factors set forth in

18 U.S.C. § 3142(g), the Court concludes as follows:  the government has not

established by a preponderance of the evidence that Watkins is a flight risk, let alone

---

[1] The Court assumes familiarity with the factual and procedural background of
this case.

that there is no combination of conditions that reasonably will assure his presence at

trial if he is released; and the government has not established by clear and convincing

evidence that Watkins presents a risk of danger for which there is no condition or

combination of conditions that will reasonably assure the safety of any other person and

the community.  As a result, Judge Schroeder's order of detention is vacated, and

Watkins shall be released once he satisfies the bail conditions set forth below.

I.      18 U.S.C. § 3142(G) FACTORS

      A.      **Nature and Circumstances of the Charged Offense**

Watkins has been charged with being a felon in possession of a handgun and

ammunition during his term of supervised release for the same offense.  More

specifically, after receiving a "tip," the United States Probation Office searched

Watkins's residence and found a loaded 9MM semi-automatic firearm inside a laundry

bag in an unlocked trunk in his bedroom.

This factor weighs against release, particularly given that Watkins was on

supervised release for being a felon in possession of ammunition when he committed

the alleged offense.  Moreover, although defense counsel may be correct that the

firearm was not "easily/readily accessible," Docket Item 49-1, it certainly was not

secured.  Nor did Watkins unload the gun before hiding it.

That being said, "this is simply the first of the § 3142(g) factors" and is only "one

factor in the analysis."  *Enix*, 209 F. Supp. 3d at 564-65 (ordering release on conditions

where the defendant was "charged with some very serious crimes, including a RICO

conspiracy that involved a pattern of racketeering activity involving murder, robbery,

kidnapping, drug trafficking, and obstruction of justice as part of its predicate acts"); *see also United States v. Mattis*, 963 F.3d 285, 287 (2d Cir. 2020) (affirming release on $250,000 bond and home detention where the defendants were charged with throwing a Molotov cocktail into a police vehicle).

### B.    Weight of the Evidence

The weight of the evidence "is considered the least important" of the § 3142(g) factors. *United States v. Parker*, 65 F. Supp. 3d 358, 365 (W.D.N.Y. 2014). That is both "because it is inherently difficult to assess the Government's case before trial" and because "a defendant must be presumed innocent." *Id.* (citing *United States v. Fama,* No. 13 Cr. 234 (JFK), 2013 WL 2467985, at *3 (S.D.N.Y. June 7, 2013)).

Watkins has advanced suppression arguments, which remain pending before this Court. The strength of the government's case will depend on the outcome of that motion. Thus, the Court agrees with Watkins that this factor "does not weigh strongly in favor of the government." Docket Item 49-1 at 18.

### C.    History and Characteristics of the Defendant

Watkins has strong family ties to Western New York. He is a life-long resident of Buffalo, as is his wife. Docket Item 49-1 at 19. He has one teenage son, who resides with him and his wife, and his daughter-in-law and grandson live in the second-floor apartment in his house. *Id.* He has a sister who lives down the street, and several other family members live nearby. *Id.*

On the other hand, Watkins has a significant criminal history, including three firearm-related offenses in addition to the current offense. *See* Docket Item 54. Two of

those were committed in the early 1990's, when he was 23 and 25 years old, respectively. *Id.*  Watkins is now 55 years old.

He completed a five-year term of supervised release in 2017 with no violations, and aside from the instant offense, he has "abided by all of his conditions [of his release] regarding employment, curfew, and abstinence from drug/alcohol use." *Id.* Watkins states that he "no longer has any savings" because "pretrial incarceration exhausted his savings and he incurred many debts since March 2021." *Id.*

Watkins has some significant health issues that weigh in favor of releasing him. He "has experienced bouts of blood in his stool" but has been unable to see a specialist while incarcerated at the Niagara County Jail. *Id.*  His counsel stated at oral argument that it would be of significant benefit to Watkins to be released so that he can get the appropriate medical attention.  Moreover, Watkins's wife also "is going through some health complications," which have "impacted her ability to work." *Id.* at 20.  If Watkins is released, "he can help his wife with her care . . . and taking care of their teenage son." *Id.*

All in all, the Court finds that despite Watkins's significant criminal history, his personal characteristics, and especially his strong family ties and medical issues, weigh in favor of his release on conditions.

### D.   Nature and Seriousness of the Danger Posed to any Person or the Community

Last, but certainly not least, is the nature and seriousness of the danger Watkins poses to any person or the community.  On this point, the Court is deeply concerned by evidence that Watkins chose to illegally keep a loaded gun hidden but not locked

away—especially because he was on supervised release for another firearm offense.

But as defense counsel aptly noted at oral argument, the key question is whether the

government has shown *by clear and convincing evidence* that *no conditions or*

*combination of conditions* can protect any person or the community.  Here, the

government has not demonstrated that there is a "high degree of certainty" that Watkins

will be a danger if he is confined to his home on electronic monitoring.  *See Enix*, 209 F.

Supp. 3d at 563 (quoting *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir.

1985)).  He had no such monitoring on his prior term of supervised release during which

he allegedly committed the instant offense, and that monitoring provides the additional

protection that tips the balance on a close call.

* * *

For all those reasons, this Court finds that Watkins should be released pending

trial under the conditions outlined below.

### E.    Conditions

Watkins proposes the following conditions for his release:

a) *Home Detention/Curfew with Electronic Monitoring*.  As part of this
   condition, Mr. Watkins will be permitted to travel to/from his home to
   identified job sites as well as to medical appointments. At all other
   times, Mr. Watkins is to remain in his residence at 126 Stanton Street,
   Buffalo, NY.  In the event the Court is not prepared to allow travel in
   the beginning, then home confinement can be ordered with a look
   towards permitting travel in the future once a track record of
   compliance is established.

b) *Secured Appearance Bond*. Karen Watkins can secure the bond with
   her home . . . which, upon information and belief, is free and clear of
   liens in the amount of $20,000.00.  If additional security is necessary,
   Sonya Arrington, the defendant's sister, has agreed to ensure Mr.
   Watkins appearance with her residence located at 98 Stanton Street,

> Buffalo, NY . . . for an additional $100,000.00. This would entail
> $120,000.00 in surety commitments.

Docket Item 49-1 at 12-13.

At this time, the Court concludes that the more restrictive "home incarceration" program—under which the defendant can leave his home only for medical necessities, court appearances, or other activities specifically approved by the Court—is necessary to mitigate the risk of danger to the community.  The Court further finds that a "zero tolerance" condition—meaning that any violation of the terms of Watkins's supervision will result in his detention—is necessary to mitigate the risk of danger.  The Court finds, however, that the bond secured by Karen Watkins's home is sufficient to ensure Watkins's appearance and will not require Sonya Arrington to add the security from her residence.

## **CONCLUSION**

For all the reasons stated above, this Court finds that the government has not shown by a preponderance of the evidence that no condition or combination of conditions will ensure the appearance of the defendant.  Nor has the government shown by clear and convincing evidence that no condition or combination of conditions will ensure the safety of any other person and the community.  Therefore, the detention order issued by United States Magistrate Judge Schroeder, Docket Item 44, is VACATED, and the defendant is hereby ordered released pending trial on the following conditions:

1.  The defendant must post with the Court a bond, in a form approved by the Court, in the amount of $20,000 secured by the agreement of Karen Watkins to forfeit the property owned by her (126 Stanton Street, Buffalo, New York), based upon evidence that she holds a total equity value in the property of at least $20,000.  The agreement and bond shall be posted to secure the defendant's appearance at all proceedings as required, and to secure the defendant's compliance with all the conditions set forth herein.  The failure to appear as required or otherwise comply with the conditions set forth herein shall result in forfeiture of the property securing the $20,000 bond.

2.  The defendant shall participate in the "home incarceration" location-restriction program at his residence (126 Stanton Street, Buffalo, New York) and abide by all the requirements of the program, which will include electronic monitoring.  The defendant shall pay all or part of the costs of the program based upon his ability to pay as determined by the Probation Office.  "Home incarceration" means that the defendant is restricted to his residence at all times except for medical necessities, court appearances, or other activities specifically approved by the Court.

3.  The defendant shall refrain from obstructing or attempting to obstruct or tamper, in any fashion, with electronic monitoring that is required as a condition of release.

4.  The defendant shall submit to a search of his person, property, vehicle, place of residence, or any other property under his control, based upon reasonable suspicion, and permit confiscation of any evidence or contraband discovered.

5.  The defendant shall report to Pretrial Services within 24 hours of release and as directed by the U.S. Probation Officer.

6.  The defendant shall surrender any passport/passport card to the Clerk of the Court and surrender other international travel documents to the appropriate authorities.

7.  The defendant shall not obtain a new passport or other international travel documents.

8.  The defendant's travel is restricted to the Western District of New York, unless Court permission is granted to travel elsewhere.

9.  The defendant shall not possess any firearm, ammunition, or destructive device.

10.  The defendant shall not use alcohol.

11.  The defendant shall not use or possess a narcotic drug unless prescribed for him by a licensed medical provider.

12.  The defendant shall submit to drug/alcohol testing and/or treatment as directed by the Probation Office, including co-pay.

13.  The defendant shall refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibited-substance testing that is required as a condition of release.

14.  The defendant shall report within 72 hours to the Probation Office any contact with any law-enforcement personnel, including, but not limited to, any arrest, questioning, or traffic stop.

15.  Any violation of the terms of the defendant's supervision shall result in his immediate detention ("zero tolerance").

SO ORDERED.

Dated:   May 12, 2022
        Buffalo, New York

_____
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE