UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

LARRY WATKINS, JR.,

Defendant.

21-CR-50
DECISION & ORDER

The defendant, Larry Watkins, Jr., was charged in an indictment with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  Docket Item 10.  On April 8, 2021, the case was referred to United States Magistrate Judge H. Kenneth Schroeder, Jr., for all proceedings under 28 U.S.C. § 636(b)(1)(A) and (B).  Docket Item 12.

On May 22, 2021, Watkins moved, *inter alia*, to suppress evidence and statements.  Docket Item 16.  On June 11, 2021, the government responded, Docket Item 18, and on June 18, 2021, Watkins replied, Docket Item 21.  Judge Schroeder heard oral argument on June 28, 2021, and determined that an evidentiary hearing was necessary.  That hearing was conducted on August 17, 2021, and the parties submitted post-hearing briefs on November 29, 2021, Docket Items 33 and 34.

On March 24, 2022, Judge Schroeder issued a Report, Recommendation, and Order ("RR&O") recommending that this Court grant in part and deny in part Watkins's motion to suppress.  Docket Item 42.  More specifically, Judge Schroeder recommended granting the motion as to the statements Watkins made before he was given a *Miranda* warning, *see Miranda v. Arizona*, 384 U.S. 436, 444 (1966), and

denying the motion as to the statements Watkins made after he received a *Miranda* warning, as well as with respect to the firearm found in Watkins's residence.

On April 5, 2022, Watkins filed a motion for reconsideration, Docket Item 45, which Judge Schroeder denied the following day, Docket Item 46. On April 7, 2022, Watkins objected to the RR&O's recommendation to deny the motion to suppress the firearm and the post-*Miranda* statements. Docket Item 47. On April 28, 2022, the government responded to the objections, Docket Item 52, and on May 13, 2022, Watkins replied, Docket Item 58. This Court heard oral argument on May 20, 2022, and reserved decision.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3). The court must review *de novo* those portions of a magistrate judge's recommendation to which a party objects. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3).

This Court has carefully and thoroughly reviewed the RR&O, the objection, the response, the reply, and the materials submitted to Judge Schroeder, including the video of Watkins's post-*Miranda* statements to law enforcement. Based on that *de novo* review, the Court accepts and adopts the RR&O, and grants in part and denies in part Watkins's motion to suppress.

## **DISCUSSION**

The Court assumes the reader's familiarity with the underlying facts and Judge Schroeder's analysis in the RR&O, *see* Docket Item 42.

I.  THE SEARCH OF WATKINS'S RESIDENCE

After receiving an anonymous tip that Watkins had a firearm in violation of the conditions of his supervised release, federal probation officers, with the assistance of law enforcement, searched Watkins's residence and found the weapon at issue here. *See* Docket Item 28 at 10-16.[1]  Watkins argues that Judge Schroeder erred in relying on the Second Circuit's decisions in *United States v. Reyes*, 283 F.3d 446 (2d Cir. 2002), and *United States v. Braggs*, 5 F.4th 183 (2d Cir. 2021), to find that the warrantless search of Watkins's residence was lawful under the "special needs" exception.  Docket Item 47-1 at 14.  Watkins suggests that both of those cases are distinguishable because, unlike in *Reyes*, the probation officers who searched Watkins's residence were not conducting a "home visit," and, unlike the defendant in *Braggs*, Watkins did not consent to searches of his residence absent reasonable suspicion.  *Id.* at 14-18.

Watkins's attempt to sidestep *Braggs* and *Reyes* is unpersuasive.  *Braggs* held that "[u]nder the Special Needs Doctrine, a parole officer may search a parolee so long as the search is reasonably related to the performance of the officer's duties."  5 F.4th at 184.  "Among these duties," the Court explained, "are the supervision, rehabilitation, and societal reintegration of the parolee, as well as assuring that 'the community is not harmed by the [parolee's] being at large.'"  *Id.* at 187 (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 875 (1987)); *see also Reyes*, 283 F.3d at 459 (explaining that "[o]ne of the principal purposes of a probation/parole officer's observation and supervision responsibilities is to ensure that a convicted person under supervision does not again commit a crime").  Thus, the *Braggs* court found that once the defendant's parole officer

---

[1]  Page numbers refer to ECF pagination.

"received notice of an anonymous tip suggesting that [the defendant] had guns in his possession—a clear violation of his parole conditions—[the parole officer] and his team were constitutionally permitted to search the house to determine whether [the defendant] was complying with the relevant condition." 5 F.4th at 188 (footnote omitted).

So, too, here. Although Watkins was on federal supervised release rather than parole, the Second Circuit has held that the "principles [of the 'special needs' doctrine] apply *a fortiori* to federal supervised release." *Reyes*, 283 F.3d 446, 461-62; *see also id.* at 458 (stating that the "observation [that a parolee's Fourth Amendment rights are diminished] applies with equal force to individuals . . . subject to federal supervised release"). Thus, the question this Court must answer is whether the search of Watkins's residence was "reasonably related to the [probation] officer's duties." *Braggs*, 5 F.4th at 187. And based on the tip received by the probation office—which indicated that Watkins was violating the terms of his supervised release—the search clearly meets that bar. *See id.* at 188; *see also Reyes*, 283 F.3d at 462 (explaining that "[t]he 'overwhelming interest in ensuring that a parolee complies with [parole] requirements and is returned to prison if he fails to do so,' also exists in full measure with respect to a convicted person serving a term of federal supervised release" (internal quotation marks omitted) (quoting *Pennsylvania Board of Probation and Parole v. Scott,* 524 U.S. 357, 368 (1998))).

This is not to say that the "special needs" doctrine gives probation officers carte blanche to search for any reason. "If, for example, a [probation] officer conducted a search for a personal reason—such as to retaliate against a [supervisee] for a

4

perceived slight—that action would not be 'rationally and reasonably related' to [the probation officer's] duties . . . ." *United States v. Turner*, No. 21 CR. 409 (CM), 2021 WL 8055692, at *4 (S.D.N.Y. Dec. 20, 2021). Likewise, searches for no reason at all or repeated harassing searches might well not pass muster. But nothing of that sort happened here.

Nor does "the 'special needs' doctrine effectively obviate[ ] this Court's 2019 order in the [Judgment] & Commitment that searches be conducted 'based upon reasonable suspicion' only," as Watkins suggests. Docket Item 47-1. Based on that condition, *law enforcement* could search based on reasonable suspicion rather than the general requirement of probable cause. *See United States v. Knights*, 534 U.S. 112, 122 (2001) (holding that a "warrantless search of [the defendant by law enforcement], supported by reasonable suspicion and authorized by a condition of probation, was reasonable within the meaning of the Fourth Amendment"). But that condition—intended to expand the defendant's exposure to searches—does not limit the ability of probation officers to do their job.[2]

Finally, although not required under *Braggs*, this Court agrees with the government that the probation officer had reasonable suspicion to search based on the confidential informant's tip. The informant told the probation office that "two weeks earlier, [Watkins] showed the confidential informant two firearms in [Watkins's]

---

[2] Although law enforcement assisted the probation officers with the search at the probation officers' request, *see* Docket Item 28 at 11-13, that does not change the calculus. *See Braggs*, 5 F.4th at 188 (explaining that the "special needs" doctrine "rest[s] on the rehabilitative relationship between the parolee and the parole officer, and thus [does] not extend[ ] to other law enforcement officers *unless they are acting under the direction of the parole officer*" (emphasis added) (quoting *United States v. Freeman*, 479 F.3d 743, 748 (10th Cir. 2007))).

waistband, and that [Watkins] stated that he did not leave his home without them." Docket Item 52 at 3; *see id.* at 9-16.  The informant described the firearms and correctly noted that Watkins drove a silver truck.  *Id.* at 3, 11.  That information, combined with the probation office's knowledge that Watkins was on supervised release for a firearm-related offense, meets the "minimal level of objective justification" for suspecting criminal activity required by the reasonable suspicion standard.  *See United States v. Sokolow*, 490 U.S. 1, 7 (1989).[3]

For all those reasons, this Court accepts and adopts Judge Schroeder's recommendation to deny Watkins's motion to suppress the firearm found in his residence.

## II.   WATKINS'S STATEMENTS

Watkins also moved to suppress (1) statements he made to FBI Special Agent Robert Grunder in his home before being given a *Miranda* warning and (2) statements he made in the parking lot of a nearby McDonald's a short time later after the warning was given.  As noted above, Judge Schroeder recommended that this Court suppress the first category of statements but not the second.  This Court agrees with that recommendation.

---

[3] At oral argument, defense counsel raised the issue of erroneous tips being repeatedly called in to harass a defendant.  Of course, if the probation office had received this tip after determining that other tips about the same defendant were untrue, that would factor into the reasonable suspicion calculus.  But that was not the case here.

### A.     Pre-*Miranda* Statements

The government did not object to Judge Schroeder's finding that the statements Watkins gave in his home without a *Miranda* warning should be suppressed. Recommendations by a magistrate judge to which a party does not object need not be reviewed by the district judge. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Nevertheless, this Court has reviewed that portion of the R&R and agrees with Judge Schroeder's conclusion that Watkins "was in custody at the time and that *Miranda* warnings and an advice of rights should have been given to [him] before Special Agent Grunder started questioning him about the gun." Docket Item 42 at 15. This Court therefore grants Watkins's motion to suppress the statements he made in his home.

### B.     Post-*Miranda* Statements

Watkins objects to the R&R's conclusion that the *Miranda* warning given in the McDonald's parking lot was sufficient, urging this Court to find that Grunder deliberately used a two-step interrogation technique in violation of *Missouri v. Seibert*, 542 U.S. 600 (2004). *See* Docket Item 47-1 at 20-33. This Court disagrees.

Judge Schroeder noted that he had "observed the demeanor of Special Agent Grunder during his testimony and hear[d] his answers to the questions put to him," and, based on that testimony, found "Grunder to be a credible witness and accept[ed] his testimony." Docket Item 42 at 19. Based on Grunder's testimony, Judge Schroeder found that the initial questioning in Watkins's home "was not part of a 'deliberate' attempt to withhold *Miranda* warnings." *Id.* at 18.

This Court does not see any reason to reject that finding or to solicit further testimony from Grunder. *See United States v. Quintana*, No. 12-CR-214S, 2018 WL

7

718565, at *2 (W.D.N.Y. Feb. 6, 2018) (explaining that "[a]s a general matter, this Court defers to a magistrate judge's credibility findings in a criminal suppression context"); see also Carrion v. Smith, 549 F.3d 583, 588 (2d Cir. 2008) (noting that "a district judge should normally not reject a proposed finding of a magistrate judge that rests on a credibility finding without having the witness testify before the judge").  And because there was no deliberate two-step investigation, this Court agrees with Judge Schroeder that under Oregon v. Elstad, 470 U.S. 298 (1985), the statements made after the Miranda warning was given should not be suppressed.  Docket Item 42 at 20.

In Elstad, the Supreme Court considered "whether an initial failure of law enforcement officers to administer the warnings required by Miranda[,] . . . without more, 'taints' subsequent admissions made after a suspect has been fully advised of and has waived his Miranda rights."  Id. at 300.  The Court held that "there is no warrant for presuming coercive effect where the suspect's initial inculpatory statement, though technically in violation of Miranda, was voluntary."  Id. at 318.  In other words, "a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite Miranda warnings."  Id.

In such a circumstance, "[t]he relevant inquiry is whether, in fact, the second statement was also voluntarily made."  Id.; see also United States v. Carter, 489 F.3d 528, 534 (2d Cir. 2007) (explaining that "under Elstad, if the prewarning statement was voluntary, then the post[-]warning confession is admissible unless it was involuntarily made despite the Miranda warning").  "As in any such inquiry, the finder of fact must examine the surrounding circumstances and the entire course of police conduct with

respect to the suspect in evaluating the voluntariness of his statements." *Elstad*, 470 U.S. at 318. And "[t]he fact that a suspect chooses to speak after being informed of his rights is, of course, highly probative." *Id.*

But law enforcement may not manipulate a suspect by intentionally getting a confession before *Miranda* warnings are given and then giving the warnings and simply repeating the process. *See Seibert*, 542 U.S. at 617. As the Second Circuit has explained, "*Seibert* lays out an exception to *Elstad* for cases in which a deliberate, two-step strategy was used by law enforcement to obtain the post[-]warning confession." *Carter*, 489 F.3d at 536. Where "such a strategy was not employed . . . , the holding in *Elstad* applies." *Id.* Because, based on Judge Schroeder's credibility determination, this Court adopts his finding that Grunder did not employ a deliberate two-step strategy, the question therefore is whether the post-warning statement was voluntarily made.[4]

After reviewing the evidence presented at the hearing—including the video of Watkins's post-*Miranda* interrogation—this Court agrees with Judge Schroeder that Watkins voluntarily gave the statement after receiving a *Miranda* warning. *See* Docket Item 42 at 20-21. For that reason, Watkins's second statement was not obtained in violation of his Fifth Amendment rights, and Watkins's motion to suppress that statement is denied.

---

[4] Watkins does not argue—nor does this Court see any basis to find—that the statements he made at his house, although made without a *Miranda* warning, were otherwise involuntarily.

**CONCLUSION**

For the reasons stated above and in the RR&O, Watkins's motion to suppress is GRANTED as to his statements prior to being given a *Miranda* warning and otherwise DENIED.

SO ORDERED.

Dated:   June 17, 2022
         Buffalo, New York

                                              *s/ Lawrence J. Vilardo*
                                              LAWRENCE J. VILARDO
                                              UNITED STATES DISTRICT JUDGE